UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PASTORE, EMILY MARTORANO, and GIOMAR REYES, on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>ENZO CLINICAL LABS, INC. and ENZO BIOCHEM, INC.,<br><br>     Defendants. | Case No.: 2:23-cv-4636<br><br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

## I.  <u>CLASS ACTION COMPLAINT</u>

Plaintiffs ROBERT PASTORE, EMILY MARTORANO, and GIOMAR REYES ("Plaintiffs"), on behalf of themselves and others similarly situated ("the Class"), bring this action against Defendants ENZO CLINICAL LABS, INC. and ENZO BIOCHEM, INC. (collectively, "Enzo" or "Defendants") for actual damages suffered by Plaintiffs and the Class, statutory damages, penalties, restitution, injunctive relief, and for other recovery specified herein for harm caused by Enzo's negligent conduct, breach of contract, and violations of the California Consumer Privacy Act, California Customer Records Act, California Confidentiality of Medical Information Act, California Consumers Legal Remedies Act, the California Constitution's right to privacy, the California Unfair Competition Law, the New York Constitution's right to privacy, and the New York General Business Law. Plaintiffs allege upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

## II.  <u>INTRODUCTION</u>

1.     Data security has taken center stage as global losses from cybercrime exceed $1 trillion annually. The global pandemic has only made consumers and organizations more

vulnerable to cyber attacks and increased the importance of strong safeguards against cybercriminals.

2.      Because of the highly sensitive nature of the data maintained in their care, healthcare institutions are leading targets for cyber attacks. The rapid growth of electronic medical recordkeeping, online medical services, and mobile medical apps has created new pressure points for criminals to exploit. IBM Research shows the healthcare industry has been the hardest hit by cybercrime for twelve consecutive years.

3.      Responsible institutions have reacted by implementing better training practices, increasing their security workforces, and increasing investment in new and more secure technologies.

4.      Enzo is a healthcare company focused on collecting and analyzing patient lab work used in connection with medical treatment. Patients entrust it with their most personal information—their healthcare data. Such data can include past medical procedures, chronic health issues, or catastrophic diagnoses. Because of its highly sensitive nature, this information is protected by vanguard legislation in states like California, where statutes specifically protect patients' personal medical information.

5.      In April 2023, and perhaps even earlier, unauthorized users accessed approximately 2.4 million Enzo patient files. Upon accessing the accounts, these unauthorized users obtained patients' sensitive personal medical information.

6.      Rather than alerting patients of the breach right away as required under state law, Enzo discretely mentioned the breach in a securities filing in April, only notifying patients when news outlets reported on the breach two months later. The delay caused further harm, allowing the hackers more time to exploit the information.

### III.  FACTUAL ALLEGATIONS

7.      Enzo is a global healthcare conglomerate founded in 1976, offering clinical laboratory, molecular diagnostic, and biotechnology services in 70 countries. It touts itself as "the first biotechnology company to go public," which it did in 1980.

8.      Since approximately 2010, it has rapidly expanded its clinical laboratory practice in a nationwide marketplace. A 2010 press release announced:

> In recent years, our Company has invested heavily in the Clinical Lab, expanding our physical plant, adding advanced diagnostic equipment, and installing state of the art accounting systems and communications functionality, to speed accurate and prompt reports to our physician clients.

The expansion was designed to enable Enzo's laboratory facilities in New York to provide test services from physicians in all parts of the country. It has since received clinical laboratory licenses or accreditation throughout the northeast and in California, Florida, and Maryland. The company's clinical laboratory subsidiary, Enzo Clinical Labs, generates most of the conglomerate's $100+ million of annual revenue.

9.      The company positions itself as having "an obsession with technology" and, according to its website, is "leading the convergence of clinical laboratories, life sciences, and intellectual property through the development of unique diagnostic platform technologies."



Filings with the SEC announce:

> Enzo combines over 40 years of expertise in technology development with assay development capabilities and diagnostic testing services to create high performance, cost-effective, and open assay solutions.

10.     When Enzo collects or receives lab testing from patients, the patients provide Enzo with highly sensitive medical information, such as their medical history, current conditions, medications, and specimen material, such as blood samples or cell swabs. Patients additionally grant Enzo access to sensitive personal information, including but not limited to their name, social security number, date of birth, mailing address, and telephone number.

11.     Enzo is required under federal law to maintain patient data in strict confidence. Under the Health Insurance Portability and Accountability Act ("HIPAA") Security Management Process Standard (45 C.F.R. § 164.308), Enzo is required to "implement policies and procedures to prevent, detect, contain, and correct security violations;" and "implement a security awareness and training program for all members of its workforce;" among other things.

12.     Additionally, state laws require Enzo to keep their electronic networks and databases that contain patient data secure and to send prompt and appropriate notifications when a breach occurs. Under California law, Enzo is required to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure" (Cal. Civ. Code § 1798.81.5); and to "disclose a breach of the security of the system following discovery or notification of the breach … in the most expedient time possible" (Cal. Civ. Code § 1798.82). These laws apply to Enzo as it is a company performing clinical lab work on patients who reside in California and as it holds a license from the California Department of Public Health to perform clinical laboratory work for or concerning California residents.

13.     Similarly, under New York's Stop Hacks and Improve Electronic Data Security Act ("SHIELD Act"), amending New York's data breach notification law [Article 39-F of the General Business Law, as added by chapter 442 of the laws of 2005 and amended in 2019], Enzo is required to adopt reasonable safeguards to protect the security, confidentiality, and integrity of private information; implement a data security program containing risk assessments, employee training, vendor contracts, and timely data disposal; and to notify individuals affected by a breach in the most expedient time possible after a breach. New York Codes, Rules and

Regulations, Title 10, section 58-1.8 prohibits disclosure of clinical lab work results to any person unauthorized to see the information.

14.     Enzo's Privacy Policy claims it "respects individual privacy and values the confidence of its customers," and the company advertises itself as highly diligent in safeguarding its customers' accounts. According to claims on the company's website,

> [W]e are required by law to maintain the privacy of "protected health information." "Protected health information" includes any individually identifiable information that we obtain from you or others that relate to your past, present or future physical or mental health, the health care you have received, or payment for your health care.

(Enzo Clinical Labs "HIPAA Policy" webpage.)

15.     In other public filings, Enzo states:

> … the Company is presently in material compliance with all applicable laws or statutes and … relating to the privacy and security of IT Systems and Data and to the protection of such IT Systems and Data from unauthorized use, access, misappropriation or modification … and the Company has implemented backup and disaster recovery technology consistent with industry standards and practices.

(May 12, 2023, Form S-3.)

16.     Enzo did not keep its promise to maintain patient privacy. Its system lacked simple and almost universal security measures used by healthcare companies, such as data storage in secure, offline locations; up to date software using standard security patches; anti-virus applications that block malicious code from external sources; and policies requiring all workers with system access to use https protocols when using online tools.

17.     Enzo's failure to use these and other industry-standard security measures needlessly exposes patients whose data was stored with Enzo to the risk of data theft.

18.     On or before April 4, 2023, until on or about April 6, 2023, Enzo negligently and illegally allowed an unauthorized third-party to access patients' data files. The unauthorized user gained access to the Enzo system through a ransomware attack, where malicious software restricted Enzo users to accessing tools. Enzo continued to operate while under attack. But on or around April 11, 2023, according to Enzo, it realized that the unauthorized user had accessed, manipulated, exfiltrated, and stole 2.4 million patients' personal medical information, including their names, dates of service, and medical test results. The unauthorized user also accessed the

social security numbers of 600,000 patients. Because of this negligent and illegal conduct, patients' data is now for sale on the dark web.

19.     Enzo neglected to inform customers of its security failure and the unauthorized theft of their personal medical information for weeks. The first public acknowledgement of the breach was in a June 2023 filing with securities regulators at the SEC. Letters to the affected patients notifying them that their information was released in the hack began to trickle out at the same time. In total, 58 days passed between the first sign of the ransomware attack and the mailing of Enzo's notice. Remarkably, other public filings denied the existence of the breach. Enzo's May 25, 2023, Form S-3 filing with the SEC stated:

> … there has been no material security breach or other compromise of any of the Company's information technology and computer systems, networks, hardware, software, data (including the data of its customers, employees, suppliers, vendors and any third party data maintained by or on behalf of the Company), equipment or technology and the Company has not been notified of, and has no knowledge of any event or condition that would reasonably be expected to result in, any security breach or other compromise to the Company's IT Systems and Data.

(May 12, 2023, From S-3.) By the time of this filing, Enzo had been aware of the ransomware attack that caused the data breach for at least a month.

20.     When patients finally learned of the exfiltration of their medical files by way of letters Enzo mailed in June 2023, they were outraged. Their most sensitive information had been for sale to the highest bidder in a criminal auction for almost two months. As a result, the patients experienced and continue to experience anxiety, stress, and anger.

21.     Patients have incurred and will continue to incur expenses trying to mitigate their harm. Identity theft protection and credit monitoring services cost consumers as much as $30 per month. Tracking down and containing hacked medical information is even more costly, requiring the use of private investigators and data security professionals. Studies by the National Institute of Standards and Technology show hackers often steal data and then hold it for future use years, or even decades later. Thus, the victims of the Enzo data breach will require ongoing protections.

22.      In addition, patients have spent substantial amounts of their time attempting to remedy the losses and securing their information and assets from further losses consequent to the breach.

## IV.    <u>JURISDICTION AND VENUE</u>

23.      This action is brought as a class action for common law negligence and breach of contract and under the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150), Customer Records Act ("CRA") (Cal. Civ. Code § 1798.82), Confidentiality of Medical Information Act ("CMIA") (Cal. Civ. Code §§ 56. *et seq.*); Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*), the California Constitution's right to privacy (Cal. Const., art. I, § 1); the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); the New York Constitution's right to privacy (N.Y. Const., art. I, § 6); and the New York General Business Law ("GBL") (N.Y. Gen. Bus. § 349) for monetary and equitable relief due to Enzo's negligent, unlawful, and unfair conduct.

24.      This Court has personal jurisdiction over Enzo because Enzo does business in the state of New York and the claims asserted herein arise from conduct occurring, in part, within New York. This court also has original jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 ("CAFA").

25.      Venue is proper in this Court because, *inter alia*, Enzo engages and performs business activities and is headquartered in this judicial district. Many of the acts committed by Enzo complained of herein occurred in this judicial district.

## V.    <u>THE PARTIES</u>

26.      Plaintiff Robert Pastore is, and at all relevant times was, a resident of the state of California. In June 2023, Pastore was notified that his name, social security number, dates of service, and clinical test information were released in the April 2023 data breach. Pastore relied on and expected Enzo to take reasonable care with the information he provided Enzo so that he could use the service and, based on this reliance and expectation, allowed Enzo to access and hold his personal medical information. As early as April 4, 2023, and possibly sooner, Enzo negligently and illegally allowed a third-party access to Pastore's personal medical information

and his social security number. Because of this negligent and illegal conduct, Pastore will incur substantial monetary and non-monetary losses, including the cost of mitigating the harm caused by the loss of privacy, the cost of identity theft protection and credit monitoring services, and stress, anxiety, and outrage associated with the release of his most personal information. Enzo neglected to inform Pastore of this breach for at least 58 days after the initial breach occurred. Pastore has since spent hours of his own time attempting to research and remedy the loss and securing his assets and information.

27.     Plaintiff Emily Martorano is, and at all relevant times was, a resident of the state of California. In June 2023, Martorano was notified that her name, social security number, dates of service, and clinical test information was released in the April 2023 data breach. Martorano relied on and expected Enzo to take reasonable care with the information she provided Enzo so that she could use the service and, based on this reliance and expectation, allowed Enzo to access and hold her personal medical information. As early as April 4, 2023, and possibly sooner, Enzo negligently and illegally allowed a third-party access to Martorano's personal medical information and social security number. Because of this negligent and illegal conduct, Martorano will incur substantial monetary and non-monetary losses, including the cost of mitigating the harm caused by the loss of privacy, the cost of identity theft protection and credit monitoring services, and stress, anxiety, and outrage associated with the release of her most personal information. Enzo neglected to inform Martorano of this breach for at least 58 days after the initial breach occurred. Martorano has since spent hours of her own time attempting to research and remedy the loss and securing her assets and information from further breach.

28.     Plaintiff Giomar Reyes is, and at all relevant times was, a resident of the state of New York. In June 2023, Reyes was notified that his name, social security number, dates of service, and clinical test information were released in the April 2023 data breach. Reyes relied on and expected Enzo to take reasonable care with the information he provided Enzo so that he could use the service and, based on this reliance and expectation, allowed Enzo to access and hold his personal medical information. As early as April 4, 2023, and possibly sooner, Enzo negligently and illegally allowed a third-party access to Reyes's personal medical information

and his social security number. Because of this negligent and illegal conduct, Reyes will incur substantial monetary and non-monetary losses, including the cost of mitigating the harm caused by the loss of privacy, the cost of identity theft protection and credit monitoring services, and stress, anxiety, and outrage associated with the release of his most personal information. Enzo neglected to inform Reyes of this breach for at least 58 days after the initial breach occurred. Reyes has since spent hours of his own time attempting to research and remedy the loss and securing his assets and information.

29.     Defendant Enzo Clinical Labs, Inc. is a corporation engaged in healthcare services, organized and existing under the laws of the State of New York, with its principal place of business located at 60 Executive Blvd. in Farmingdale, New York. It collects and maintains the personal medical information of individuals who submit to testing in its facilities, which are primarily located in New York and New Jersey, but also collects and maintains such information from individuals who submit to testing and reside in other states, including California. It is a wholly owned subsidiary of Enzo Biochem, Inc. It operates Enzo's clinical lab services. Enzo Clinical Labs, Inc. obtained and stored the personal medical information released in the April 2023 breach.

30.     Defendant Enzo Biochem, Inc. Defendant Enzo Clinical Labs, Inc. is a corporation engaged in healthcare services, organized and existing under the laws of the State of New York, with its principal place of business located at 81 Executive Blvd., Suite 3, in Farmingdale, New York. It is the parent company of Enzo Clinical Labs, Inc. It operates, administers, and controls all of Enzo Clinical Labs, Inc.'s business activities. Enzo Biochem, Inc. set the policies and procedures that led to the April 2023 breach.

## VI.   CLASS ALLEGATIONS

31.     Plaintiffs bring this action to seek monetary and equitable relief as a class action pursuant to Federal Rules of Civil Procedure, Rule 23, on behalf of themselves and the following Class:

> All individuals whose personal information was released in the April 2023 Enzo data breach.

32. Plaintiffs Pastore and Martorano further bring this action on behalf of themselves and the following subclass (the "California Subclass"):

All Class members who were California residents.

33. Plaintiffs reserve the right to amend the Class or Subclass definitions if discovery or further investigation demonstrates that they should be expanded or otherwise modified.

34. The members of the Class are so numerous that joinder of all members would be impracticable. On information and belief, approximately 2,470,000 individuals' personal medical information was subject to unauthorized access, exfiltration, and theft.

35. There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a. Whether Enzo's sub-standard security protocols resulted in a breach of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of patients' sensitive personal medical information and to protect that information;

b. Whether Enzo's sub-standard security protocols resulted in a violation of an implied contractual obligation to safeguard the Class's sensitive personal medical information;

c. Whether Enzo's conduct violated California's consumer protection and privacy laws;

d. Whether Enzo's conduct violated New York's consumer protection and privacy laws; and

e. Whether, because of Enzo's misconduct, Plaintiffs and the Class are entitled to compensatory damages, restitution, penalties, and equitable relief, and, if so, the amount and nature of such relief.

36. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs have no interests antagonistic to those of the Class and are not subject to any unique defenses.

37. Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class action and complex litigation.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

    a.  It is economically impractical for members of the Class to prosecute individual actions;

    b.  The Class is readily ascertainable and definable;

    c.  Prosecution as a class action will eliminate the possibility of repetitious litigation; and

    d.  A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

39.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## VII.  CAUSES OF ACTION

### First Cause of Action

### (On Behalf of all Plaintiffs and the Class)

### Negligence

40.     Plaintiffs incorporate the above allegations as if set forth fully herein.

41.     The Defendants owed a duty of reasonable care to Plaintiffs and the Class based upon Defendants' relationship to Plaintiffs and the Class as providers of medical diagnostic services; based upon custom and practice in the healthcare industry; based upon Defendants' right to control information in their possession, exercise of control over the information in their possession, authority to control the information in their possession, and the commission of affirmative acts that resulted in the harms and losses alleged herein. Additionally, Defendants' duty is based on the requirements of California Civil Code section 1714 requiring all "persons," including Defendants, to act in a reasonable manner toward others. Additionally, the duty is based on the specific statutory duties imposed on Defendants under California Civil Code sections 56 and 1798.80, *et seq.*, as healthcare institutions and businesses operating in the State of California that own or license computerized data and maintain their customers' personal information. The duty is further based on the specific statutory duties imposed on Defendants

under California Civil Code sections 1798.100, *et seq.*, as businesses operating in the State of California that have annual operating revenue above $25 million.

42.     Defendants breached their duty by negligently and recklessly collecting, maintaining, and controlling the Class's sensitive personal medical information and designing, maintaining, and controlling systems that exposed the Class's sensitive personal medical information, of which Defendants had control and possession, to the risk of exposure, and actual exposure, to unauthorized persons.

43.     Defendants further committed *per se* breaches of duty by negligently violating the dictates of California Civil Code sections 56; 1798.82, *et seq.*; and 1798.100, *et seq.*; and the provisions of the California Constitution and the New York Constitution enshrining the right to privacy, by failing to inform Plaintiffs and the Class of the access to their sensitive personal medical information by unauthorized persons expeditiously and without delay and failing to adequately safeguard this information from unauthorized access. The provisions of the California Civil Code, the California Constitution, and the New York Constitution that Defendants violated were enacted to protect the class of plaintiffs involved here from the type of injury that incurred, namely their right to privacy and the protection of their personal data. Plaintiffs and the Class were within the class of persons and consumers who were intended to be protected by California Civil Code sections 56, 1798.82, *et seq.*; 1798.100, *et seq.*; the California Constitution; and the New York Constitution.

44.     As a direct consequence of the actions identified above, and the breaches of duties indicated thereby, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive personal medical information of Plaintiffs and the Class, causing them harms and losses including but not limited to the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, anxiety, stress, outrage, and privacy injuries associated with having their sensitive personal medical information disclosed.

**Second Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Breach of Implied Contract**

45.     Plaintiffs incorporate the above allegations as if set forth fully herein.

46.     At all relevant times an implied contract existed and was in force between Defendants on one hand and Plaintiffs and the Class on the other. This contract was implied by conduct and by written expressions Defendants maintained online.

47.     The implied contract included promises and commitments made by Defendants, including but not limited to promises and commitments to safeguard the sensitive personal medical information Plaintiffs and the Class entrusted to Defendants and to take reasonable action to expediently notify Plaintiffs and the Class in the event of a breach of Defendants' systems that compromised the security of this information.

48.     Plaintiffs and the Class allowed Defendants to procure and maintain their personal medical information as a part of the provision of Defendants' services. Plaintiff and Class tendered money in exchange for Defendants' services and upon Defendants' solicitation or invitation. This exchange took place within the course of Defendant's regular business practices.

49.     Defendants accepted Plaintiffs' and the Class's personal medical information for the purpose of providing services for Plaintiff and the Class, thereby entering an implied contract whereby Defendants became obligated to reasonably safeguard Plaintiffs' and the Class's personal medical information.

50.     At the time Plaintiffs and the Class supplied their personal medical information to and paid Defendants, Plaintiffs and the Class intended to enter a relationship whereby and with the understanding that Defendants would adequately safeguard their personal medical information; and ensure that others entrusted with the personal medical information would also protect the confidentiality of that information.

51.     Plaintiffs and the Class would not have entrusted their personal medical information to Defendants absent the existence of this implied contract. Had Defendants

disclosed to Plaintiffs and the Class that they lacked adequate security practices to safeguard personal medical information, Plaintiffs and the Class would not have provided their personal medical information to Defendants.

52.     Defendants knew or should have known by the nature of the information that personal medical information, such as lab test results, are highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and the Class.

53.     At all relevant times and in all relevant ways, Plaintiffs and the Class performed their obligations under the contract in question or were excused from performance of such obligations through the unknown and unforeseen conduct of others.

54.     Defendants breached these duties and violated these promises by failing to properly safeguard the sensitive personal medical information of Plaintiffs and the Class; by negligently, and recklessly collecting, maintaining, and controlling, this information; by designing, maintaining, and controlling systems that exposed their customers' sensitive personal medical information of which Defendants had control and possession to the risk of exposure to unauthorized persons; and by failing to inform Plaintiffs and the Class in a reasonable time after the breach occurred.

55.     As a direct consequence of the breaches of contract and violations of promises described above, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive personal medical information of Plaintiffs and the Class, causing them harms and losses including but not limited to the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal medical information disclosed.

**Third Cause of Action**

**(On Behalf of Plaintiffs Pastore and Martorano and the California Subclass)**

**Violation of the California Consumer Privacy Act**

**(Cal. Civ. Code § 1798.150 ("CCPA"))**

56.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

57.     At all relevant times, Defendants were "businesses" under the terms of the CCPA as sole proprietorships, partnerships, limited liability companies, corporations, associations, or other legal entities operating in the State of California that collect consumers' personal information, and that have annual operating revenue above $25 million.

58.     At all relevant times, Plaintiffs Pastore and Martorano and the California Subclass were "consumers" under the terms of the CCPA as natural persons as defined in Section 17014 of Title 18 of the California Code of Regulations.

59.     By the acts described above, Defendants violated the CCPA by negligently and recklessly collecting, maintaining, and controlling their customers' sensitive personal medical information and by designing, maintaining, and controlling systems that exposed their customers' sensitive personal medical information of which Defendants had control and possession to the risk of exposure to unauthorized persons, thereby violating their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information. Defendants allowed unauthorized users to view, use, manipulate, exfiltrate, and steal the nonencrypted and nonredacted personal information of Plaintiffs and other customers, including their personal medical information.

60.     Plaintiffs have complied with the requirements of California Civil Code section 1798.150(b)[1] and attach herewith as Exhibit 1 a true and correct copy of the letter of June 20,

---

[1] Plaintiffs presently seek only individual relief under the CCPA and, upon the expiration of time prescribed by Civil Code section 1798.150(b), will amend this complaint to confirm the Defendants have declined or failed to cure the noticed violations.

2023, providing Defendants with written notice of the specific provisions of the CCPA Plaintiffs allege have been violated via certified mail.

61.     As a result of Defendants' violations, Plaintiffs Pastore and Martorano and the California Subclass are entitled to all actual and compensatory damages according to proof or statutory damages allowable under the CCPA, whichever are higher, and to such other and further relief as this Court may deem just and proper.

**Fourth Cause of Action**

**(On Behalf of Plaintiffs Pastore and Martorano and the California Subclass)**

**Violation of the Customer Records Act**

**(Cal. Civ. Code § 1798.82 ("CRA"))**

62.     Plaintiffs incorporate the above allegations as if set forth fully herein.

63.     At all relevant times, Defendants were "businesses" under the terms of the CRA as corporations or other groups operating in the State of California that owned or licensed computerized data that included the personal information of Plaintiffs and the California Subclass.

64.     At all relevant times, Plaintiffs Pastore and Martorano and the California Subclass were "customers" under the terms of the CRA as natural persons who provided personal information to Defendants for the purpose of purchasing or leasing a product or obtaining a service from Defendants.

65.     By the acts described above, Defendants violated the CRA by allowing unauthorized access to customers' personal medical information and then failing to inform them when the unauthorized use occurred for weeks or months, and in the case of Plaintiffs Pastore and Martorano, for 58 days, thereby failing in their duty to inform their customers of unauthorized access expeditiously and without delay.

66.     As a direct consequence of the actions as identified above, Plaintiffs Pastore and Martorano and the Class incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to

recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal medical information disclosed, and related losses and injuries that they would not have otherwise incurred had Defendants immediately informed them of the unauthorized use.

67.    As a result of Defendants' violations, Plaintiffs Pastore and Martorano and the Class are entitled to all actual and compensatory damages according to proof, to non-economic injunctive relief allowable under the CRA, and to such other and further relief as this Court may deem just and proper.

**Fifth Cause of Action**

**(On Behalf of Plaintiffs Pastore and Martorano and the California Subclass)**

**Violation of the California Confidentiality of Medical Information Act**

**(Cal. Civ. Code § 56,** *et seq.* **("CMIA"))**

68.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

69.    At all relevant times, Defendants subject to the CMIA as Defendants were "providers of health care" under the terms of the CMIA. Defendants were businesses organized to maintain and make available medical information for the diagnosis and treatment of medical patients; businesses offering software, including mobile applications, designed to maintain medical information in order to make information available to patients or providers of health care for purposes of diagnosis, treatment, or management of a medical condition; persons or entities engaged in the art and science of medicine and to such other arts and sciences as may be included within the field of medicine; persons or entities engaged in clinical laboratory practice and sciences; and persons or entities that operated organized outpatient health facilities providing direct medical services or diagnostic services to patients. Alternatively, Defendants were subject to the CMIA as Defendants were "contractors" under the terms of the CMIA as persons or entities providing contract services to providers of health care or that were part of a medical service group or organization.

70.     At all relevant times, Plaintiffs Pastore and Martorano and the California Subclass were "patients" under the terms of the CMIA natural persons who received health care services from a provider of health care and to whom medical information pertains.

71.     Defendants were in possession of Plaintiffs Pastore and Martorano and the California Subclass's "medical information," as defined by the CMIA, including individually identifiable information derived from providers of health care or contractors regarding Plaintiffs Pastore and Martorano and the California Subclass's medical history, physical condition, or treatment.

72.     Defendants violated the CMIA by disclosing medical information regarding Plaintiffs Pastore and Martorano and the California Subclass without first obtaining authorization; by negligently maintaining the confidential medical information of Plaintiffs Pastore and Martorano and the California Subclass; by creating, maintaining, preserving, or storing the medical information of Plaintiffs Pastore and Martorano and the California Subclass in a manner that failed to preserve the confidentiality of the information; and by creating, maintaining, or operating an electronic health record system or electronic medical record system that failed to protect and preserve the integrity of electronic medical information of Plaintiffs Pastore and Martorano and the California Subclass.

73.     Defendant's negligence allowed the medical information of Plaintiffs Pastore and Martorano and the California Subclass to be accessed by unauthorized third persons and permitted it to escape or spread from its normal place of storage, and therefore negligently released the information within the meaning of CMIA, at which time the medical information was viewed by unauthorized persons.

74.     As a result of Defendants' violations, Plaintiffs Pastore and Martorano and the California Subclass are entitled to all actual and compensatory damages according to proof or statutory damages allowable under the CMIA, whichever are higher, to punitive damages, to attorneys' fees and costs of litigation, and to such other and further relief as this Court may deem just and proper.

**Sixth Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Violation of the Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"))**

75.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

76.    At all relevant times, Plaintiffs and the Class were "consumers" as under the terms of the CLRA as individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

77.    At all relevant times, Defendants' actions and conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA. The clinical lab work offered and sold by Defendants constitute "services" under the CLRA.

78.    By the acts described above, Defendants violated California Civil Code section 1770(a)(5), by the use of untrue or misleading statements and omissions and representing that goods and services had characteristics or benefits they do not have.

79.    By the acts described above, Defendants violated California Civil Code section 1770(a)(14), by representing that Enzo maintained the highest level of data security and a promise to personal medical safeguard information from unauthorized use when Defendants knew such rights were not conferred.

80.    Defendants knew, or should have known, that their representations and advertisements about the nature of their data security and promise to fully reimburse funds lost due to unauthorized use were false or misleading and were likely to deceive a reasonable consumer. No reasonable consumer would use Defendants' products or engage Defendants' services if they knew Defendants were not taking reasonable measures to safeguard their personal medical information or if they knew Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use.

81.    Plaintiffs have complied with the requirements of California Civil Code section 1782 and attaches herewith as Exhibit 2 a true and correct copy of his letter of June 20, 2023,

providing Defendants with written notice of the specific provisions of the CLRA Plaintiffs allege have been violated via certified mail.[2]

82.     Pursuant to California Civil Code section 1780(d), attached hereto as Exhibit 3 is a declaration on behalf of Plaintiffs Pastore and Martorano showing that this action has been commenced in the proper forum.

83.     Defendants generated revenue by way of Plaintiffs and the Class paying or providing access to medical insurance payments when entering transactions with Defendants where Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants represented in that Defendant did not take reasonable measures to safeguard customers' personal medical information. In reliance on Defendants' misrepresentations about its products and services, Plaintiffs and the Class entered transactions with Defendants that they would not have, or for which Plaintiffs and the Class would have paid less but for Defendants' representations.

84.     As a direct and proximate consequence of the actions as identified above, Plaintiffs and the Class suffered injury in fact, harms, and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal medical information disclosed.

85.     Defendants' conduct described herein was malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to Plaintiffs and the Class and refused to remedy the breach of their system long after learning of the inadequacy of their data protection measures and the unauthorized use of customers' accounts.

---

[2] Pursuant to Civil Code section 1782(d), Plaintiffs presently seek only injunctive relief under the CLRA and, upon the expiration of time prescribed by Civil Code section 1782, will amend this complaint to confirm the Defendants have declined or failed to correct, repair, replace, or otherwise rectify their violation and to add claims for actual, punitive, and statutory damages, as appropriate.

86.     As a result of Defendants' violations, Plaintiffs and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement. Plaintiffs also seek public injunctive relief as provided for under California Civil Code section 1750, in addition to reasonable attorneys' fees and costs pursuant to California Civil Code section 1780(e), and such other and further relief as this Court may deem just and proper.

### Seventh Cause of Action

### (On Behalf of Plaintiffs Pastore and Martorano and the California Subclass)

### Violation of the California Constitution's Right to Privacy

### (Cal. Const., art I, § 1)

87.     Plaintiffs incorporate the above allegations as if set forth fully herein.

88.     The California Constitution provides:

"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.)

89.     Plaintiffs Pastore and Martorano and the California Subclass had a legally recognized and protected privacy interest in the personal medical information provided to and obtained by Defendants, including but not limited to an interest in precluding the dissemination or misuse of this sensitive and confidential information and the misuse of this information for malicious purposes such as the theft of funds and property.

90.     Plaintiffs Pastore and Martorano and the California Subclass reasonably expected Defendants would prevent the unauthorized viewing, use, manipulation, exfiltration, theft, and disclosure of their personal medical information and the unauthorized use of their accounts.

91.     Defendants' conduct described herein resulted in a serious invasion of the privacy of Plaintiffs Pastore and Martorano and the California Subclass, as the release of personal medical information, including but not limited to names, social security numbers, dates of lab testing service, and lab testing results could highly offend a reasonable individual.

92.     As a direct consequence of the actions as identified above, Plaintiffs Pastore and Martorano and the California Subclass suffered harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal medical information disclosed.

**Eighth Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Violation of the Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"))**

93.     Plaintiffs incorporate the above allegations as if set forth fully herein.

94.     By engaging in the above-described unfair business acts and practices, Defendants committed and continue to commit one or more acts of unlawful and unfair conduct within the meaning of the UCL.  These acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

95.     Defendants' acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL. Defendants failed and continue to fail to implement and maintain reasonable security procedures and practices appropriate to protect the personal information; failed and continue to fail to inform their customers of unauthorized access expeditiously and without delay; and made and continue to make misrepresentations to customers regarding the nature and quality of their data protection, all in violation of, *inter alia*, the following California laws:

a.   California Civil Code section 1798.150(a);

b.   California Civil Code section 1798.82(a);

c.   California Civil Code section 56.36;

d.   California Civil Code section 56.101;

e.   California Civil Code section 1770(a)(5);

f.   California Civil Code section 1770(a)(14);

g.   California Constitution, article I, section 1;

h.   New York Constitution, article I, section 6; and

i.   New York General Business Law, section 349.

96.     Defendants' acts and practices constitute a continuing and ongoing unfair business activity defined by the UCL. Defendants' conduct is contrary to the public welfare as it transgresses civil statutes designed to protect individuals' constitutional and statutory right to privacy, violates established public policy, and has been pursued to attain an unjustified monetary advantage for Defendants by creating personal disadvantage and hardship to their customers. As such, Defendants' business practices and acts have been immoral, unethical, oppressive and unscrupulous and has caused injury to customers far greater than any alleged countervailing benefit.

97.     Defendants generated revenue by way of Plaintiffs and the Class paying or generating medical insurance payments when entering transactions with Defendants where Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants represented in that Defendants did not take reasonable measures to safeguard customers' personal medical information. In reliance on Defendants' misrepresentations about its products and services, Plaintiffs and the Class entered transactions with Defendants that they would not have, or for which Plaintiffs and the Class would have paid less but for Defendants' representations.

98.     As a direct and proximate consequence of the actions as identified above, Plaintiffs and the Class suffered and continue to suffer harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal medical information disclosed.

99.    Plaintiffs seek an order of this Court awarding restitution and injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure section 1021.5, and to such other and further relief as this Court may deem just and proper.

## Ninth Cause of Action

### (On Behalf of Plaintiff Reyes and the New York Subclass)

### Violation of the New York Constitution's Right to Privacy

### (N.Y. Const. art. I, § 6)

100.    Plaintiffs incorporate the above allegations by as if set forth fully herein.

101.    The New York Constitution provides:

"[n]o person shall be deprived of life, liberty or property without due process of law." (N.Y. Const., art. I, § 6.)

102.    Plaintiff Reyes and the New York Subclass had a legally recognized and protected privacy interest in the personal medical information provided to and obtained by Defendants, including but not limited to an interest in precluding the dissemination or misuse of this sensitive and confidential information and the misuse of this information for malicious purposes.

103.    Plaintiff Reyes and the New York Subclass reasonably expected Defendants would prevent the unauthorized viewing, use, manipulation, exfiltration, theft, and disclosure of their personal medical information.

104.    Defendants' conduct described herein resulted in a serious invasion of the privacy of Plaintiff Reyes and the New York Subclass, as the release of personal medical information, including but not limited to names, social security numbers, dates of medical lab testing, and medical lab test results could highly offend a reasonable individual.

105.    As a direct consequence of the actions as identified above, Plaintiff Reyes and the New York Subclass suffered harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of

further loss, and privacy injuries associated with having their sensitive personal medical information disclosed.

## Tenth Cause of Action

### (On Behalf of all Plaintiffs and the Class)

### Violation of the New York General Business Law

### (N.Y. Gen. Bus. § 349 ("GBL"))

106.    Plaintiffs incorporate the above allegations as if set forth fully herein.

107.    Plaintiffs and the Class are "persons" within the meaning of N.Y. Gen. Bus. § 349(g).

108.    Defendants are a "person, firm, corporation, or association" within the meaning of N.Y. Gen. Bus. § 349(b).

109.    Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by falsely representing the nature and quality of their protection of personal medical information.

110.    Defendants further engaged in deceptive acts and practices by omitting that they lacked standard healthcare industry security measures, such as secure offline data storage; updated security patches; anti-virus applications; and internal policies requiring https protocols when using online tools. Defendants thereby misleadingly failed to disclose fully and truthfully all material facts regarding how they would protect the personal medical information of Plaintiffs and the Class.

111.    A reasonable consumer, and a reasonable patient, would be misled by these deceptive acts and practices.

112.    These deceptive acts and practices were consumer-oriented because they had a broad impact on patients using Defendants' services at large. Defendants' services were available to the general public, including through their public, online services, which were not unique to the parties, and through marketing and sales not limited to a single transaction, but instead aimed at a robust consumer and patient base and the marketplace for healthcare services in general.

113.    The alleged deceptive acts and practices occurred in New York, where Defendants operate their principal place of business. Moreover, the New York State Department of Health and other state and municipal agencies within the state granted Defendants a license, permit, or accreditation pursuant to which Defendants operated clinical laboratory services, and thus New York has a significant interest in enforcing the regulations associated with that license, including New York Codes, Rules and Regulations, Title 10, sections 34-2.9 and 58-1.8, and in enforcing its consumer protection statutes, including New York General Business Law § 349.

114.    Plaintiffs and the Class were injured as a direct and proximate result of Defendants' deceptive acts and practices because, among other reasons, they allowed Defendants to obtain and store their personal medical information while believing that the data would be held securely and in conformity with healthcare industry standard practices. Absent Defendants' deceptive acts and practices, Plaintiffs and the Class would not have allowed Defendants access to their personal medical information and would not have paid the rates charged, or would not have paid at all, for the clinical laboratory services Defendants provided.

115.    Plaintiffs and the Class members are entitled to injunctive relief, actual damages or fifty dollars per violation (at their election), and reasonable costs and attorney's fees because of Defendants' deceptive acts and practices. Plaintiffs and Class are also entitled to treble damages because these actions were willful and knowing. Defendants, who advertise themselves as a technology-centric company, were aware that they lacked the tools necessary to secure patients' personal medical information, such as offline data storage, updated security patches, anti-virus applications, and internal policies requiring https protocols when using online tools, all while holding themselves out as concerned with patient privacy, compliant with confidentiality laws, and meeting the high standards of the healthcare industry in data security practices.

## VIII.  PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class, pray for relief and judgment against Defendants as follows:

1.    For an order certifying the proposed Class and Subclasses pursuant to Federal Rules of Civil Procedure, Rule 23;

2.      For an order appointing Plaintiffs Robert Pastore, Emily Martorano, and Giomar Reyes and their counsel to represent the Class and Subclass;

3.      For an order enjoining Enzo, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing the unlawful practices as set forth herein, including but not limited to employing substandard data safety protocols to protect customer information, making ongoing false representations regarding the nature and quality of their data security, and from promising to fully compensate customer losses due to unauthorized use;

4.      For actual and compensatory damages according to proof pursuant to the California Civil Code, New York law, and all other applicable laws and regulations;

5.      For restitution to the extent permitted by applicable law;

6.      For punitive damages pursuant to California Civil Code, section 56.35 and all other applicable laws;

7.      For civil and statutory penalties available under applicable law;

8.      For pre-judgment and post-judgment interest;

9.      For an award of attorneys' fees, costs, and expenses as authorized by applicable law; and

10.     For such other and further relief as this Court may deem just and proper.

## IX.  DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all issues so triable.

 Respectfully submitted,

Dated this 21st day of June 2023.        /s/ Justin S. Nematzadeh
_____

NEMATZADEH PLLC
101 Avenue of the Americas, Suite 909
New York, NY 10013
Telephone: (646) 799-6729
jsn@nematlawyers.com

ERICKSON KRAMER OSBORNE, LLP
Julie C. Erickson*
Elizabeth A. Kramer*
Kevin M. Osborne*
44 Tehama St.
San Francisco, CA 94105
Telephone: (415) 635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs Robert Pastore, Emily Martorano, and Giomar Reyes*

\* *pro hac vice* application forthcoming

# Exhibit 1

# ERICKSON KRAMER + OSBORNE

Mailing address: 44 Tehama St.
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

June 20, 2023

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Enzo Biochem, Inc.
81 Executive Blvd
Farmingdale, NY 11735

> *RE: Robert Pastore & Emily Martorano, Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

This letter shall constitute notice under California Civil Code section 1798.150 of the California Consumer Privacy Act ("CCPA") that Robert Pastore & Emily Martorano, individually and on behalf of all others similarly situated, demand that you remedy your violations of the CCPA within thirty (30) days from your receipt of this letter.

"All others similarly situated" is defined as follows:

All individuals whose personal information was released in the April 2023 Enzo data breach.

It is the contention of Mr. Pastore & Ms. Martorano that you violated subsection (a)(1) of Civil Code section 1798.150, which reads as follows:

Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

> (B) Injunctive or declaratory relief.

> (C) Any other relief the court deems proper.

CCPA Notice Letter, Civil Code section 1798.150
June 20, 2023

Mr. Pastore & Ms. Martorano, whose personal medical information was disclosed consequent to unauthorized use your networks, individually and on behalf of all other similarly situated, hereby request full compensation of all lost funds related to breaches of your platform in 2023, for lost time dedicated to the investigation of and attempt to recover the loss of information and cure harm to their privacy, and for the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from the date of this correspondence.

Pursuant to the CCPA, if, within thirty (30) days from your receipt of the date of this correspondence, you actually cure the violation noticed herein and provide the Mr. Pastore & Ms. Martorano, through my firm, with an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against you.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne



Mailing address: 44 Tehama St.
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

June 20, 2023

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Enzo Clinical Labs, Inc.
60 Executive Blvd
Farmingdale, NY 11735

> *RE: Robert Pastore & Emily Martorano, Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

This letter shall constitute notice under California Civil Code section 1798.150 of the California Consumer Privacy Act ("CCPA") that Robert Pastore & Emily Martorano, individually and on behalf of all others similarly situated, demand that you remedy your violations of the CCPA within thirty (30) days from your receipt of this letter.

"All others similarly situated" is defined as follows:

All individuals whose personal information was released in the April 2023 Enzo data breach.

It is the contention of Mr. Pastore & Ms. Martorano that you violated subsection (a)(1) of Civil Code section 1798.150, which reads as follows:

Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

> (B) Injunctive or declaratory relief.

> (C) Any other relief the court deems proper.

CCPA Notice Letter, Civil Code section 1798.150
June 20, 2023

Mr. Pastore & Ms. Martorano, whose personal medical information was disclosed consequent to unauthorized use your networks, individually and on behalf of all other similarly situated, hereby request full compensation of all lost funds related to breaches of your platform in 2023, for lost time dedicated to the investigation of and attempt to recover the loss of information and cure harm to their privacy, and for the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from the date of this correspondence.

Pursuant to the CCPA, if, within thirty (30) days from your receipt of the date of this correspondence, you actually cure the violation noticed herein and provide the Mr. Pastore & Ms. Martorano, through my firm, with an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against you.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne

Page 2 of 2

# Exhibit 2



Mailing address: 44 Tehama St.
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

June 20, 2023

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Enzo Biochem, Inc.
81 Executive Blvd
Farmingdale, NY 11735

    *RE: RE: Robert Pastore & Emily Martorano, Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

    This letter shall constitute notice under California Civil Code section 1782 of the Consumers Legal Remedies Act ("CLRA") that Robert Pastore & Emily Martorano, individually and on behalf of all others similarly situated, demand that you remedy your violations of the CLRA within thirty (30) days from your receipt of this letter.

    "All others similarly situated" is defined as follows:

    All individuals whose personal information was released in the April 2023 Enzo data breach.

    It is the contention of Mr. Pastore & Ms. Martorano and all others similarly situated that you violated certain applicable rules, laws and regulations in Civil Code section 1770. As the direct result of your unfair, unlawful and fraudulent business practices, Mr. Pastore & Ms. Martorano and all others similarly situated suffered actual pecuniary harm in the form of out-of-pocket expenses, including but not limited to lost time dedicated to the investigation of and attempt to recover the loss of their personal medical information and cure harm to their privacy, and the need for future expenses and time dedicated to the recovery and protection of further loss. Your fraudulent representations, concealments, and failures to disclose concerning the nature and quality of your data protection services constitute violations of the CLRA, which states in pertinent part that it is a deceptive act or practice to engage in the following:

    (a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
    (a)(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

Cal. Civ. Code, § 1770.

CLRA Demand Letter, Civil Code section 1782
June 20, 2023

The specific misrepresentations at issue are as follows:

[W]e are required by law to maintain the privacy of "protected health information." "Protected health information" includes any individually identifiable information that we obtain from you or others that relate to your past, present or future physical or mental health, the health care you have received, or payment for your health care.

Mr. Pastore & Ms. Martorano, whose personal medical information was disclosed consequent to unauthorized use your networks, individually and on behalf of all other similarly situated, hereby request full compensation of all lost funds related to breaches of your platform in 2023, for lost time dedicated to the investigation of and attempt to recover the loss of information and cure harm to their privacy, and for the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from the date of this correspondence.

Please be advised that your failure to comply with this request within thirty (30) days from the writing of this correspondence may subject you to the following remedies, which are available, for violation of the Consumers Legal Remedies Act:

1. The actual damages suffered;
2. An order enjoining you from such methods, acts or practices;
3. Restitution to Mr. Pastore & Ms. Martorano and all others similarly situated;
4. Any other relief the Court deems proper; and
5. Attorney fees.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne



Mailing address: 44 Tehama St.
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

June 20, 2023

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Enzo Clinical Labs, Inc.
60 Executive Blvd
Farmingdale, NY 11735

    *RE: RE: Robert Pastore & Emily Martorano, Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

    This letter shall constitute notice under California Civil Code section 1782 of the Consumers Legal Remedies Act ("CLRA") that Robert Pastore & Emily Martorano, individually and on behalf of all others similarly situated, demand that you remedy your violations of the CLRA within thirty (30) days from your receipt of this letter.

    "All others similarly situated" is defined as follows:

    All individuals whose personal information was released in the April 2023 Enzo data breach.

    It is the contention of Mr. Pastore & Ms. Martorano and all others similarly situated that you violated certain applicable rules, laws and regulations in Civil Code section 1770. As the direct result of your unfair, unlawful and fraudulent business practices, Mr. Pastore & Ms. Martorano and all others similarly situated suffered actual pecuniary harm in the form of out-of-pocket expenses, including but not limited to lost time dedicated to the investigation of and attempt to recover the loss of their personal medical information and cure harm to their privacy, and the need for future expenses and time dedicated to the recovery and protection of further loss. Your fraudulent representations, concealments, and failures to disclose concerning the nature and quality of your data protection services constitute violations of the CLRA, which states in pertinent part that it is a deceptive act or practice to engage in the following:

    (a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
    (a)(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

Cal. Civ. Code, § 1770.

CLRA Demand Letter, Civil Code section 1782
June 20, 2023

The specific misrepresentations at issue are as follows:

[W]e are required by law to maintain the privacy of "protected health information."
"Protected health information" includes any individually identifiable information
that we obtain from you or others that relate to your past, present or future physical
or mental health, the health care you have received, or payment for your health care.

Mr. Pastore & Ms. Martorano, whose personal medical information was disclosed
consequent to unauthorized use your networks, individually and on behalf of all other similarly
situated, hereby request full compensation of all lost funds related to breaches of your platform in
2023, for lost time dedicated to the investigation of and attempt to recover the loss of information
and cure harm to their privacy, and for the need for future expenses and time dedicated to the
recovery and protection of further loss. These sums must be paid in full within thirty (30) days
from the date of this correspondence.

Please be advised that your failure to comply with this request within thirty (30) days from
the writing of this correspondence may subject you to the following remedies, which are available,
for violation of the Consumers Legal Remedies Act:

1. The actual damages suffered;
2. An order enjoining you from such methods, acts or practices;
3. Restitution to Mr. Pastore & Ms. Martorano and all others similarly situated;
4. Any other relief the Court deems proper; and
5. Attorney fees.

We solicit your prompt attention to this matter and thank you in advance for your
anticipated cooperation.

Sincerely,

Kevin M. Osborne

# Exhibit 3

DocuSign Envelope ID: 14A2D817-F08C-48D9-8BE7-184A22562D20

Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PASTORE, EMILY MARTORANO, and GIOMAR REYES, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ENZO CLINICAL LAB, INC. and ENZO BIOCHEM, INC.,<br><br>        Defendants. | Case No.:<br><br>CLRA VENUE DECLARATION OF PLAINTIFF ROBERT PASTORE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d) |

CLRA VENUE DECLARATION OF PLAINTIFF ROBERT PASTORE
PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(D)

I, Robert Pastore, hereby declare the following:

1.      I am a Plaintiff in the above-captioned action.

2.      I make this declaration in support of the filing of the Complaint in this action, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code, section 1750, *et seq*.

3.      During all time periods relevant to this Complaint, I was a resident of the State of California. I am still currently a resident of the State of California.

4.      Enzo Biochem, Inc.'s principal address is in Farmingdale, New York. I confirmed this through Enzo Biochem, Inc.'s statements of information from the New York Secretary of State, on June 20, 2023.

5.      Enzo Clinical Labs, Inc.'s principal address is in Farmingdale, New York. I confirmed this through Enzo Clinical Labs, Inc.'s statements of information from the New York Secretary of State, on June 20, 2023.

6.      Accordingly, pursuant to California Code of Civil Procedure, section 1780, the United States District Court for the Eastern District of New York is the proper venue for Plaintiffs' California Consumer Legal Remedies Act claims.

        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, that I have personal knowledge of the facts stated herein, and that I could verify the accuracy of the same if called upon to testify.  This document was executed on June 20, 2023 in Mission Viejo, California.

ROBERT PASTORE

---

CLRA VENUE DECLARATION OF PLAINTIFF ROBERT PASTORE
PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(D)

1

DocuSign Envelope ID: 4C516C20-CBB8-4514-8761-0F38A08F8B2E

Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PASTORE, EMILY MARTORANO, and GIOMAR REYES, on behalf of themselves and others similarly situated, | Case No.: |
| Plaintiffs, | CLRA VENUE DECLARATION OF PLAINTIFF EMILY MARTORANO PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d) |
| vs. | |
| ENZO CLINICAL LAB, INC. and ENZO BIOCHEM, INC., | |
| Defendants. | |

CLRA VENUE DECLARATION OF PLAINTIFF EMILY MARTORANO
PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(D)

1    I, Emily Martorano, hereby declare the following:

2    1.      I am a Plaintiff in the above-captioned action.

3    2.      I make this declaration in support of the filing of the Complaint in this action, which is

4 based in part on violations of the Consumers Legal Remedies Act, California Civil Code, section

5 1750, *et seq*.

6    3.      During all time periods relevant to this Complaint, I was a resident of the State of

7 California. I am still currently a resident of the State of California.

8    4.      Enzo Biochem, Inc.'s principal address is in Farmingdale, New York. I confirmed this

9 through Enzo Biochem, Inc.'s statements of information from the New York Secretary of State,

10 on June 20, 2023.

11    5.      Enzo Clinical Labs, Inc.'s principal address is in Farmingdale, New York. I confirmed

12 this through Enzo Clinical Labs, Inc.'s statements of information from the New York Secretary

13 of State, on June 20, 2023.

14    6.      Accordingly, pursuant to California Code of Civil Procedure, section 1780, the United

15 States District Court for the Eastern District of New York is the proper venue for Plaintiffs'

16 California Consumer Legal Remedies Act claims.

17        I declare under penalty of perjury under the laws of the United States of America that the

18 foregoing is true and correct, that I have personal knowledge of the facts stated herein, and that I

19 could verify the accuracy of the same if called upon to testify. This document was executed on

20 June 20, 2023 in Mountain View, California.

21

22

23                             EMILY MARTORANO

24

25

26

27

28

---

CLRA Venue Declaration of Plaintiff Emily Martorano
Pursuant to California Civil Code Section 1780(d)
1